Hill v. Ward.

JAMES HILL, plaintiff in error, v. JOHN M. WARD, defendant in error.

*Error to Williamson.*

By the Act of July 21, 1837, exceptions may be taken to opinions or decisions of the Circuit Court overruling motions in arrest of judgment, motions for new trials and continuance of causes, and the party excepting may assign for error any opinion so excepted to.

In giving or refusing instructions in matters of law, it is the duty of a Court to look at the whole record and evidence in the cause, and if, upon such examination, they are found to be appropriate and pertinent, they should be given. In short, the Court should give a legal instruction when asked, if applicable to the case under consideration, and refuse the same, though it may be strictly a legal proposition and founded upon the hypothesis that the jury believe certain facts which may be material to the issue, provided no evidence has been offered in support of the supposed state of facts.

A party cannot except to the opinion of the Court in giving or refusing instructions, except at the time they are given or refused.

Every man has a right to construct a mill dam upon his own land, but, in so doing, he must be cautious that he does no injury to another. He cannot interfere with his neighbor's rights and privileges, or set back the waters of a stream one foot upon his land, without rendering himself liable to damages commensurate with the injury sustained, unless he has so long enjoyed his privilege as to confer upon him a prescriptive right.

TRESPASS ON THE CASE in the Williamson Circuit Court, brought by the plaintiff in error against the defendant in error, and heard before the Hon. Walter B. Scates and a jury, at the April term 1844. The jury rendered a verdict for the defendant. The testimony in the cause, and the instructions asked, appear in the Opinion of the Court.

*L. Trumbull,* for the plaintiff in error.

A bill of exceptions ought to contain enough of the case to show the materiality of the instructions asked for. *Evans v. Lohr,* 2 Scam. 515; *Cummings v. McKinney,* 4 do. 58; *McKee v. Ingalls,* Ib. 34.

A party cannot assign for error the refusal of the Court to give certain instructions, unless he excepts at the time to the decision of the Court refusing the instructions. *Leigh v. Hodges,* 3 Scam. 17; *Archer v. Hubbell,* 4 Wend. 514; *Wardell v. Hughes,* 3 do. 418.

The refusal of a Court to give a proper instruction, was held a proper cause for granting a new trial. *Fisher* v. *Bridges,* 4 Blackf. 519.

A new trial shall be granted if the Judge misdirect the jury. Anon. 2 Salk. 649; 2 Duer's Pr. 128; 2 Tidd's Pr. 908.

A new trial ought to be granted, if such instruction as asked for should have been given. *Corbin* v. *Brown,* 14 Pick. 311.

In this case, the instructions asked were proper and should have been given. *Stout* v. *McAdams,* 2 Scam. 67.

*D. J. Baker,* for the defendant in error.

Where there is testimony on both sides, the Court will not, as a general rule, grant a new trial. *Lewis* v. *Peake,* 7 Taun. 153; Graham on New Trials, 362, 380.

The awarding of new trials on the testimony was formerly within the discretion of the Court, and the statute has not varied the rule much.

It is for the jury to decide, when there is testimony on both sides. *Johnson* v. *Moulton,* 1 Scam. 532; *Webster* v. *Vickers,* 2 do. 297; *Eldredge* v. *Huntington,* Ib. 538.

Courts will not grant new trials, where vindictive damages only are sought to be recovered, or merely nominal damages. *Johnson* v. *Weedman,* 4 Scam. 497, and cases there cited.

*Trumbull,* in reply, cited *Musgrave* v. *Nevinson,* 2 Lord Raym. 1360; Graham's Pr. 631; and cases before cited.

The Opinion of the Court was delivered by

PURPLE, J. The plaintiff brought an action of *trespass on the case* against the defendant in the Williamson county Circuit Court to recover damages for an alleged injury occasioned by the erection of a mill dam by the defendant, and the consequent flowing and setting back the water of a stream upon the plaintiff's land, thereby rendering a certain ford on said land inconvenient to pass, and injuring and destroying plaintiff's mill seat on said stream and land, and preventing him, plaintiff, from proceeding in the erection and construction of said plaintiff's mill dam and mill.

The cause was tried upon the general issue. The whole evidence in the case is contained in the bill of exceptions, and is substantially as follows:  The plaintiff in the first place introduced the records of the County Commissioners' Court, showing that some time in June, 1839, he had procured and caused to be executed a writ of *ad quod damnum*, preparatory to the erection of a mill upon his, plaintiff's, land.  He then read in evidence a Patent from the United States to him for the north east quarter of the north west quarter of section twenty four (24), ten (10) south, two (2) east, being the same land mentioned in plaintiff's declaration, for the injury to which he claims damages in this case.

John L. Perry testified, that plaintiff commenced getting his timbers for a mill frame and dam in 1839 or 1840; that they were put into the frame and dam; that the dam was very substantial work as far as finished; that the mill then in operation is not of much consequence; that the frame work of the mill is good and permanent; that the mill site is a tolerable good one, if not obstructed; that there is back water in an ordinary stage of water immediately below Hill's dam from one and a half to two feet deep; that the water at the ford next below and about two hundred yards from Hill's dam on Hill's land before Ward's mill was built, in a common stage of water, was about two feet deep; that since the building of Ward's dam, in a like stage of water, witness had crossed at the ford, and the water ran into his wagon bed, the bottom of which was about three and a half feet high; that the water in such a stage is over Hill's mill wheel; that Hill's wheel could not do any good in that condition; that the fall in the bed of the creek, as far as witness went, was twenty three and three fourths inches; that at the time above stated since the building of defendant's dam, the current immediately below Hill's dam did not convey corn cobs thrown in by witness to any perceivable distance in one hour's time; that the mill dam and mill site of the plaintiff, with good stones, good wheel and dam ten feet high would be worth six or seven hundred dollars; that the site and work of the plaintiff, as they now exist, if unobstructed by back water, would be worth about two hundred dollars.

On cross examination witness stated, that the plaintiff's mills, as they now are, if the privilege were unobstructed by back water, would not be worth tending; that, in his opinion, plaintiff's wheel should have been set considerably higher; that he was not a mill-wright.

James L. Ramsey testified, that in the night when Ward was not grinding, the water immediately below Hill's mill dam would rise five inches, and thereby prevent plaintiff from using his mill, and that it would fall the same when Ward's mill had run during the day, so that Hill could grind at his mill; that Hill cannot grind when Ward's dam is full; that, at such time, the water immediately below Hill's dam is three feet eight inches deep; that Hill's mill site is the best on the creek; that he is well acquainted with the creek and knows of no cause, except Ward's dam, for the rising, falling and depth of the water below Hill's dam.

On cross examination he stated, that the lower part of Hill's mill wheel is about twelve inches below the present bed of the creek, and above low water mark. On further direct examination, he stated that Hill could not complete his mill and dam on account of the depth of water below it at an ordinary stage; that Hill's dam is about four feet high at the upper part and about one foot high at the lower end of the slope.

Jeremiah Claxton testified, that Ward's mill dam at a good stage of water prevents any current of consequence between it and Hill's dam, and that he knows of nothing to occasion this want of current, except Ward's dam.

James Simmons testified, that at a common grinding stage, the water is entirely level between the two dams; that the creek is not as it used to be; believes there is back water immediately below Hill's dam at such a stage; that he knows of nothing to cause it but Ward's dam; that Hill commenced building his mill four years ago this spring; and, on cross examination, he stated, that there is back water at Hill's dam when the water is but just running over Ward's dam; that when Ward is grinding, there is some little current between the two dams; that some sand was dug out of the creek where Hill's mill frame and wheel were put, and

thrown on the opposite side on the bed of the creek, which narrowed the channel.

Felix S. Boyd stated, that the stream below Hill's dam before Ward's was built had a fine current; that now it has the appearance of back water between the two dams; that he had crossed at the ford before Ward's dam was built; that at an ordinary stage, the water there is more than a foot deeper than before Ward's dam was built; that Hill commenced building his dam in the spring of 1840.

On cross examination he stated, that the ford was not far from three hundred yards below Hill's dam, and that the water now eddies much immediately below the said dam.

Peter Ollis stated, that he knew the creek before the dams were built; that the water, at the ford, at a common stage, was never upwards of three feet deep.

Daniel Ollis stated that the water of the ford last spring at a little above the ordinary stage was about to, or did run over the back of his horse; that the water was up "right smart."

Samuel Bates stated, that he knows the ford was very much deeper than it was before Ward's dam was built; the water is from three feet five inches, to four feet deep at an ordinary stage; on Saturday, at a common stage of water, when Ward is running his mill, the water is low at Hill's mill, and on the Sunday following, without any rise in the creek when Ward is not grinding or running his mill, the water is much deeper; that the ford may be near a quarter of a mile below Hill's mill.

R. T. Kelly testified, that the ford was considerably deeper than before Ward's dam was built; that a year ago last spring and before Ward's dam was built; that a year ago last spring and since Ward's dam was built, on Sunday morning when Ward was not grinding, he crossed the ford and returned in the afternoon of the same day; that there had been no rain that day nor for a long time previous; that the streams were generally falling; that on his return, the water at the ford had risen seven or eight inches, and was mid way to his horse's sides, the horse being fifteen and a

half hands high; that he lived on the same creek and the waters of the creek elsewhere were falling.

Elijah Tippey testified, that he saw a mark immediately below Hill's dam at a time when the water was at an ordinary stage, and the water was then thirteen inches below that mark at the surface; went on down to Ward's mill examining and could see no current between the dams, and the water on Ward's dam lacked about the same measurement of being to the top of that dam; the creeks all along between the dams looked like back water; water at this time two feet deep immediately below Hill's dam at the wheel.

James Prickett testified, that the water between the two dams at a common stage does not run as it did before Ward's dam was built.

This was all the plaintiff's evidence.

The defendant then proved by Cadworth Harrison, that he was at Hill's mill with Daniel Simmons a year ago last spring, and the water was then running from his dam and works like a mill-tail; that he had known the creek and mill site twenty years, and can see no difference since Ward's dam was built; had not seen Hill's mill before that time; that they were bully works; that the water was rippling off, and apparently run as fast as it would, had Ward's dam been out of the creek; that the ford was two or three hundred yards below Hill's mill.

Daniel Simmons stated, that he had known the creek for nine years; that he was at the mill with Harrison; that there was a current at Hill's mill then; always a current there; that the ford was dug out; that there was a channel made there to let out the water, which had settled in a pool above at a very dry time; that the current between the two dams was not near as swift as formerly; that at the time Harrison was there, the current was slow.

Daniel R. Pulty testified, that he was at Hill's dam in March; that there was then three or six inches of water on the dam running over; that he threw in chunks below which floated off very slow; water at the same time running over Ward's dam, and Ward's mill was sawing and grinding; that

he was seldom at either mill; that at this time there was eighteen inches water on the apron where Hill's mill was set.

J. C. Thompson stated, that he had not been often at Hill's mill; that once when he was there, there appeared to be a pert current at the ford; that the water was running much over the dam and from the mill; that the water lacked some inches of coming to the top of the timber, which he supposed lay upon the mud sill of Hill's dam; that one of the timbers washed off Ward's dam a year or two since, ten or twelve inches in diameter; that there was but little current at Hill's mill below; that it was plainer at the ford; don't know that he saw the timber, which lay upon the mud sill of Hill's dam; water may have been three feet deep immediately below Hill's dam and works; water at the same time running over Ward's dam, and Ward's mill grinding and sawing.

Monroe Townsend stated, that when he was at the two mills, water was running over Ward's dam and lacked three or four inches of being up to the top of the timber, which he supposed lay on the mud sill of Hill's dam, and was sixteen or eighteen inches deep on the foundation, or apron of his mill wheel, and was running over his dam; threw in chips; water did not run like live water; run a little like live water close to Hill's mill; Ward's mill grinding and sawing at this time.

This was all the defendant's evidence. Upon this evidence the jury found the issue in favor of the defendant.

The plaintiff's counsel moved for a new trial for the following reasons:

1. That the verdict was contrary to law;

2. That the verdict was against evidence; and

3. The Court erred in refusing to give the jury the following instructions asked by the plaintiff, to wit:

"That there cannot be any doubt, that every flowing or throwing water upon the land of another is such an act as entitles the individual injured to his action, and even if the act of one person be in itself lawful, yet, if in its consequences it necessarily damages the property of another, the

party occasioning the damage is liable to make reparation equal to the injury he has caused."

" By building a mill dam, one does not acquire any right to overflow the land of his neighbor, whether his neighbor has a mill or not, every one must use his own property as not to injure another."

"That if the jury believe from the evidence, that the plaintiff could have raised his wheel so as to avoid the injury which may have been occasioned by the back water, if any, and still employ his head water to every advantage, yet such a state of case cannot affect the plaintiff's right to recover damages in this action."

The motion for a new trial was overruled and judgment rendered in favor of the defendant. The assignments of error in this case, call in question the correctness of the decision of the Court in overruling the motion for a new trial.

Before the passage of the statute of this State, of the 21st day of July, 1837, (Session Laws, 109,) the granting or refusing a new trial rested in the discretion of the Court before which the case was tried, and could not be assigned for error. By the Act referred to, exceptions may be taken to opinions or decisions of the Circuit Court overruling motions in arrest of judgment, motions, for new trials and |continuances of causes, and the party excepting may assign for error any opinion so excepted to. This rule being thus established, I will proceed to consider whether there is such error in the record and proceedings in this case as will warrant a reversal of the judgment.

It seems to have been conceded upon the argument of the cause, that the instructions before set out, asked for by the plaintiff's counsel, and which the Court refused, were law; and I apprehend it would scarcely be contended that they were not applicable to the issue and the evidence produced upon the trial. In the opinion of the Court, they are not, as is contended by the defendant's counsel, abstract propositions of law merely, having no necessary connection with the case

before the Court, and that they might, and should properly have been given to the jury. The ground assumed by the defendant's counsel, that these instructions should have been based upon the hypothesis that the jury believed certain facts from the evidence, is untenable.

In giving or refusing instructions in matters of law, it is the duty of a Court to look at the whole record and evidence in the cause, and if, upon such examination, they are found to be appropriate and pertinent, they should be given. In short, the Court should give a legal instruction when asked, if applicable to the case under consideration, and refuse the same, though it may be strictly a legal proposition, and founded upon the hypothesis that the jury believe certain facts which may be material to the issue, provided no evidence has been offered in support of the supposed state of facts.

The Court is of opinion, that the instructions desired by the plaintiff's counsel in this case were proper and pertinent, and that if an exception had been taken at the time they were refused, such refusal would have been error. This, as appears from the record, was not done, and it was not until after the jury had returned their verdict, that the plaintiff sought indirectly on a motion for a new trial to except to the ruling of the Court in refusing these instructions, with which, at the time of the decision, he manifested no dissatisfaction. The doctrine that a party cannot except to the opinion of a Court in giving or refusing instructions, except at the time they are given or refused, is distinctly settled by this Court in the case of *Leigh* v. *Hodges*, 3 Scam. 15, and it needs no argument nor authority to prove, that a party cannot be permitted to assign for error in this Court any decision or opinion of the Circuit Court made or expressed during the progress of a cause, in the propriety of which, at the time of its occurrence, he silently acquiesced.

Ought this judgment to be reversed upon the ground that the verdict is against evidence? At this day there can scarcely arise any dispute as to the law upon this point. Without the trouble of reference to any particular authorities, it is sufficient to say in general terms, that a new trial

will not be granted, unless the verdict of the jury is strongly and palpably against the weight of evidence.

A bare preponderance of testimony is not sufficient to warrant such interference of the Court, and when there is any serious conflict in the testimony delivered by the witnesses on either side, the jury are the peculiar and proper judges of the credibility of the witnesses, and of the weight, force and effect to be attached to their several and respective statements. For these reasons, Courts of law have at all times been reluctant to interfere with the verdicts of juries on the account, solely, of such verdicts being contrary to the evidence.

To determine how these rules of law are to be applied to the present case, a somewhat careful examination of the substance of the whole testimony is required. The evidence on the part of the plaintiff shows, in the first place, that he was the owner of the tract of land described in his declaration; that in the spring of 1840, after having procured the execution of a writ of *ad quod damnum*, he proceeded to commence the erection and construction of a mill dam and mill upon land which, by several of the witnesses, was called his, plaintiff's, land; that upon this land there was a mill seat, as good as any other upon the creek; that two hundred or three hundred yards below this place, upon the same land, there was a ford where the plaintiff and others had been accustomed to cross the stream. So far the plaintiff's testimony is undisputed by any one witness. The plaintiff then proceeds to prove by the testimony of ten witnesses, who were and for a long time previous had been conversant with the premises both before and after the erection of defendant's dam, that his mill and the operations thereof were obstructed by back water from the defendant's dam. These witnesses do not all testify to the same facts, but their evidence all tends to the same point. They detail such a multiplicity of facts and circumstances as, in our judgment, render it utterly impossible, that the plaintiff can have sustained no injury from the water thrown back upon him by defendant's dam, and still that these witnesses have testified truly.

Some of the witnesses state, that the plaintiff was pre-

vented from speedily completing his dam on account of the back water; others, that there was a current both at the dam and ford before defendant's dam was built, and none since that time at either place, except in times of high water, or when defendant's mill was in operation; that when defendant's dam was full, and his mill idle, plaintiff could not use his mill, and that, at such times, the water would rise several inches in a night immediately below plaintiff's dam, when the same stream in all other places would be gradually falling; and that the water immediately below plaintiff's dam, would alternately rise and fall, as defendant's mill was standing still, or in operation; that when defendant's dam was not full, plaintiff could use his mill, otherwise when the same had been partially drawn off; that, upon the same day, without any change of weather, or recent previous rains, the water at the ford would rise and fall seven or eight inches, corresponding to the manner in which defendant used his mill; that, in ordinary stages, and when defendant's mill is idle, the water appears to be entirely dead and level between the two dams.

To rebut the irresistible conviction which the testimony of these numerous witnesses forces upon the mind, the defendant proves by Harrison, that at one time after defendant's dam was built, he was at plaintiff's mill in company with David Simmons, and to use the witness' expression, "the water was running from the dam like a mill tail;" that he had known the stream for twenty years, and could see no difference in the current now and before the erection of defendant's dam.

The Court are of opinion, that placing entire reliance upon the testimony of this witness, so far as he states any facts, yet in so much as it conflicts with the general evidence of the plaintiff, it cannot be permitted to prevail. He had not, as appears from his evidence, been at the plaintiff's mill before, and his statement in relation to the current at that time in some degree conflicts with the evidence of defendant's next witness, Simmons, who was with him, and who states that the current there was not near as rapid as it was before the construction of defendant's dam,

The introduction of both these witnesses by the defendant is, so far as this Court for the purposes of this trial can judge, equivalent to an admission on his part that they are entitled to equal credit. By calling upon them to testify in his behalf, he vouched for the character and integrity of both. He cannot be permitted to discredit either; and without any express evidence in the record to the contrary, the Court will presume, that so far as their means of knowledge was equal, the same reliance might be placed upon the testimony of each.

The one states, that he could see no difference between the current at that time, than before the erection of defendant's dam; the other, that he could. If these witnesses were alike intelligent, and had the same means of information, their evidence might properly be considered as balanced and proving nothing in the cause. Yet, if the jury had given full credence to the one, and entirely discarded the other, we cannot perceive how, from the whole evidence, they could have arrived at their conclusion.

Where so many witnesses testify to facts which can leave no reasonable doubt on the mind, a jury are not at liberty to presume, and this Court will not infer that the current of this stream was not obstructed and flowed back upon the plaintiff's land, because one witness, although he had known the stream for twenty years, did not perceive it. This witness states no specific facts upon which he founds his opinion, except his long acquaintance with the stream, and one observation made at the mill, without any of those practical experiments which give such additional weight to the character of the plaintiff's testimony; and without any design to reflect in any degree upon the integrity of this witness, the Court is compelled, from the whole evidence, to believe that he was mistaken in his opinion. This opinion of his by no means disproves the many facts and circumstances which the plaintiff has adduced, and which cannot by possibility exist, if his perceptions are correct.

The jury in our opinion, in absence of all apparent cause for the contrary, should have regarded the facts in this case, in preference to the conclusions of a witness thus arrived at,

Hill *v.* Ward.

without an adequate knowledge of such circumstances upon which they could reasonably have been based.

The residue of the defendant's testimony strongly corroborates, and in no way conflicts with the plaintiff's, with perhaps the single exception, that Daniel Simmons states that the ford had been dug out, and the channel somewhat deepened to let off some standing water from above. This evidence is considered of slight importance. It is not stated at what period this was done, and admitting it might in some measure account for the increased depth of water at the ford if done after the defendant's dam was constructed, it affords no satisfactory evidence why the water should rise and fall at this place and the plaintiff's mill dam, under the circumstances before detailed. It is urged, however, by the defendant's counsel, that there is not in the record any direct and positive evidence that the plaintiff's mill and ford were situated upon the same land described in his declaration. The evidence upon this point, perhaps, is not entirely clear and satisfactory, and if the Court could find in the record any thing to induce it to believe that the verdict of the jury was founded upon the plaintiff's failure to identify the land to which he proved title, it would hesitate long before granting a new trial in this case. But to us the contrary appears most manifest. No question of the sort seems to have been made in the Court below. It appears to have been taken for granted, that the plaintiff's mill was upon the land described in his declaration. Several witnesses speak of the mill and ford as being on the plaintiff's land. From the whole tenor of the evidence, and the nature and character of the instructions asked, we think it fairly inferable, that upon this point there was no contest then; and regarding with a single eye, the object of the establishment of Courts, the administration of substantial justice, we are unwilling to defeat that object by sustaining what we deem an unjust verdict, for reasons which, in our opinion, are far from being satisfactory, and which we believe did not enter into the contemplation of the parties on the trial of the issue.

The evidence does not clearly show whether the plaintiff's

or defendant's dam was first erected, nor is this in any respect material in this cause. Every man has a right to construct a mill dam upon his own land; but in so doing he must be cautious that he does no injury to another. He cannot interfere with his neighbor's rights and privileges, or set back the water of a stream one foot upon his land, without rendering himself liable to damages commensurate with the injury sustained, unless he has so long enjoyed his privilege as to confer upon him a prescriptive right.

The judgment of the Circuit Court of Williamson county is reversed with costs, and the cause remanded with directions to that Court to award *a venire de novo.*

*Judgment reversed.*